**INDEX FUND, INC., Plaintiff,**

v.

**Robert R. HAGOPIAN et al.,
Defendants.**

**No. 73 Civ. 2665 (CHT).**

United States District Court,
S. D. New York.

April 27, 1981.

Kensington & Sterba, New York City, for plaintiff Index Fund, Inc.; Charles E. McGuinness, New York City, of counsel.

Graves & Allen, Oakland, Cal., Olshan, Grundman & Frome, Local Counsel, New York City, for defendant Robert R. Hagopian; Jeffrey Allen, Oakland, Cal. and Peter Schram, New York City, of counsel.

Shearman & Sterling, New York City, for defendants First Nat. City Bank and First Nat. City Trust Co. (Bahamas) Ltd.; Leonard Gross, New York City, of counsel.

Weisman, Celler, Spett, Modlin & Wertheimer, New York City, for defendants Armstrong Investors, S. A. and Armstrong Capital, S. A.; Richard A. Cohen, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for the Government; Janette Patterson, Asst. U. S. Atty., New York City, of counsel.

Stephen L. Hammerman, Regional Administrator, Securities and Exchange Commission, New York City, for the Securities and Exchange Commission; Robert M. LaPrade and Lester Green, Washington, D. C., of counsel.

## OPINION

TENNEY, District Judge.

Plaintiff Index Fund, Inc. ("Index Fund") moves pursuant to Federal Rule of Criminal Procedure ("Rule") 6(e) [1] to obtain access to various documents and transcripts generated and employed in the course of grand jury investigations into the conduct of defendants John P. Galanis [2] and Akiyoshi Yamada. For the reasons described below, the motion is denied. The plaintiff may, however, renew this motion at such time as the need for specific materials can be shown with the requisite certainty and particularity.

*Background*

The background of this action was described at length in the Court's previous Opinion, 417 F.Supp. 738 (S.D.N.Y.1976), and will not be repeated here. Briefly, Index Fund alleges that various individual

---

1. Rule 6(e) provides in pertinent part:

   Secrecy of Proceedings and Disclosure.—

   (1) General Rule.—A grand juror, an interpreter of a recording device, a typist who transcribes recorded testimony, an attorney for the Government, or any person to whom disclosure is made under paragraph (2)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of rule 6 may be punished as a contempt of court.

   (2) Exceptions.—

   . . . .

   (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

   (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

   (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

2. A default judgment was entered against John P. Galanis on April 23, 1980.

and corporate defendants participated in or facilitated a scheme to defraud it with respect to the purchase of worthless securities from an "offshore" mutual fund. In 1970, two of the prime movers in this scheme, Galanis and Yamada, allegedly bribed Robert Hagopian, who controlled plaintiff's securities investments, to purchase securities of dubious value on plaintiff's behalf. Index Fund, an open-end investment company incorporated in Massachusetts, claims that it lost more than one million dollars as a result of these and other fraudulent purchases.

During 1970, the Securities and Exchange Commission ("SEC") commenced an investigation into the activities of Galanis and Yamada. As a result of that investigation, the SEC instituted a civil injunctive action against these two individuals and forty-two other defendants in November 1971. *SEC v. Everest Management Corp., et al.*, 71 Civ. 4932 (DNE). That action, which is now before Judge David N. Edelstein, is still pending against thirteen defendants; permanent injunctions have been issued against twenty-nine defendants, including Galanis and Yamada, and two defendants have been dismissed. The scheme alleged by Index Fund was referred to in the SEC's complaint and several individuals and entities were named as defendants in both suits.

After the SEC commenced the action for injunctive relief, it referred the matter to the United States Attorney's Office for the Southern District of New York for possible criminal prosecution. Documents collected by the Commission during its formal investigation were transferred to that office and an SEC attorney was detailed to the United States Attorney to assist in the grand jury investigations. These investigations into the pre-1972 activities of Galanis and Yamada were conducted from 1972 through 1975 and gave rise to approximately fifteen criminal actions. Four of the defendants named in Index Fund's complaint were subject to criminal prosecutions: Galanis, Yamada, Hagopian, and Pericles Constanti-

nou.[3] According to the plaintiff, these defendants pled guilty to criminal charges and were sentenced accordingly.

The grand jury materials sought here were previously the subject of a discovery motion in the SEC's civil action, *SEC v. Everest Management Corp., supra.* One year ago, the SEC made a motion before Judge Edelstein requesting disclosure of the materials, which were at that time contained in twelve sealed boxes at the Commission's Washington, D. C. office. In an Opinion dated June 17, 1980, Judge Edelstein denied "the wholesale discovery of grand jury transcripts sought by the SEC" but granted the Commission's request "to cull through the materials contained in the twelve boxes in an effort to locate original documents (brokerage, bank, and corporate records) relevant to this action." According to the SEC, most of these documents were initially received by the Commission in the course of its formal investigation and then transferred to the United States Attorney's Office with the SEC's criminal reference report. The remainder of the documents was presented to the grand jury pursuant to subpoenas. After reviewing the material, the SEC presented Judge Edelstein with an "index of certain documents generated in the course of grand jury investigations of John Peter Galanis and Akiyoshi Yamada." Notice of Filing Index, dated September 5, 1980. The index divided the documents into three sections which are also relevant to the motion at hand: (1) documents that could be inspected pursuant to Judge Edelstein's June 17, 1980 Order; (2) documents that could not be inspected; and (3) transcripts of the grand jury testimony. Section I includes 109 numbered items (some items include several documents) and covers primarily corporate records, bank reports, and business letters. Section II includes ninety-three items for which a specific privilege was claimed (*i. e.*, governmental, work product, confidentiality). Section III lists the grand jury transcripts by witnesses and the dates on which they appeared.

---

**3.** A default judgment was entered against Pericles Constantinou on April 23, 1980.

In the instant motion, Index Fund requests permission to inspect and photocopy twenty-six specific Section I documents, forty-one Section II documents, and the grand jury transcripts of five witnesses including Galanis and Yamada. The defendants' responses to this motion vary. Defendants First National City Bank and First National City Trust Company (Bahamas) Limited [4] "take no position on the merits of plaintiff's motion" and "request that they be granted permission to inspect and copy the same grand jury documents and transcripts as plaintiff, plus document number 29 from Section II of the Grand Jury Index." Affidavit of Leonard Gross, sworn to January 9, 1981 ("Gross Aff."), ¶¶ 2, 5. Similarly, defendants Armstrong Investors, S. A. and Armstrong Capital, S.A. "do not object to plaintiff's application" and request "that they be granted permission to inspect and copy the same grand jury documents and transcripts as plaintiff." Affidavit of Richard A. Cohen, sworn to January 13, 1981, ¶ 2. On the other hand, Robert Hagopian vigorously objects to plaintiff's motion. The government, not surprisingly, has taken a middle-of-the-road position. The United States Attorney does not oppose plaintiff's request to inspect Section I documents, but does object to the disclosure of Section II documents or the grand jury transcripts. Although not a party to this proceeding, the SEC has also responded to Index Fund's motion. The Commission "takes no position with respect to the objections raised by the United States Attorney's office except that . . . it objects to the public production of Section II documents 72, 78, 79, and 84." Affidavit of Robert M. Laprade, sworn to January 23, 1981, ¶ 2. The remaining five defendants, including Yamada, have not responded to this motion.[5]

*Proper Forum*

█ Before ruling on plaintiff's request for the grand jury materials, it must be determined whether this motion should be resolved by this Court. This question was raised only by defendants First National City Bank and First National City Trust Company (Bahamas) Limited which state that they "take no position with respect to the propriety of plaintiff's bringing this motion in this case rather than in *SEC v. Everest Management Corp.*, a case being tried . . . before Hon. David N. Edelstein." Gross Aff. ¶ 2. After considering this question in light of the Supreme Court's recent decision in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), and upon following what appears to be the proper procedure in this case, the Court has concluded that it can entertain Index Fund's motion for a disclosure order.

While the parties agree that *Douglas Oil* establishes the standard to evaluate a request for grand jury materials, they fail to discuss the Supreme Court's remarks concerning which district court should make that evaluation: the court that supervised the grand jury investigation and which thus has control over the materials, or the court in which the civil action is pending where the materials are sought. While the *Douglas Oil* Court discussed this question at some length, it provided little guidance with respect to the instant action because the cases are factually distinct and the procedure prescribed by the Supreme Court is not equally appropriate for the case at bar. Yet by applying the general principles propounded in *Douglas Oil*, this Court has followed what it considers to be the proper procedure in the context of this case. A review of the procedural posture of the *Douglas Oil* case will help to elucidate the issue at hand.

In *Douglas Oil*, independent gasoline dealers brought a civil antitrust action against several large oil companies in the federal district court in Arizona. While these proceedings were in the pretrial

4. Although sued herein under the above names, these defendants are now more commonly known as Citibank, N.A. and Cititrust (Bahamas) Limited. Affidavit of Leonard Gross, sworn to January 9, 1981, ¶ 1.

5. According to the record in this case, the other defendants are: Yamada, Louise Yamada, Louise Yamada, Inc., Takara Partners, and Provident Securities, Inc.

stage, a government antitrust investigation in the central district of California culminated in an indictment for illegal price-fixing against two of the defendants in the Arizona suit. These defendants ultimately pleaded nolo contendere to the government's charges. Before entering this plea, the defendants asked for, and received, copies of the transcripts of testimony given by their employees to the California grand jury. After an unsuccessful discovery request, the private plaintiffs in the Arizona antitrust suit petitioned the California court for release of the grand jury transcripts now in the defendants' possession. With the consent of the government's Antitrust Division, the California district court ordered the transcripts disclosed, subject to several protective conditions.

The Supreme Court ruled that the California district court abused its discretion in issuing the disclosure order because that court concededly had no knowledge of the status of the Arizona civil suit and the needs of the parties in that case. According to the Court: "A court more familiar with the course of the antitrust litigation might have seen important differences between the allegations of the indictment and the contours of the conspiracy [plaintiffs] sought to prove in their civil actions—differences indicating that disclosure would likely be of little value to [the plaintiffs], save perhaps as a mechanism for general discovery." *Id.* at 229, 99 S.Ct. at 1678. Furthermore, the Court pointed out that the court where the civil proceeding was pending might have considered disclosure to be premature. "[I]f there were to be conflicts between [the defendants'] statements and their actions in the criminal proceedings, the court might have preferred to wait until they ripened at depositions or even during testimony at trial." *Id.* at 230, 99 S.Ct. at 1678–79. In the view of the Supreme Court, the "better practice" would have been for the California district court to send the requested materials to the Arizona court after evaluating the need for continued grand jury secrecy and determining that disclosure might be appropriate. *Id.* "[A]rmed with its special knowledge of

the status of the civil actions," the Arizona court could then have considered the requests for disclosure in light of the California court's evaluation of the need for continued grand jury secrecy. *Id.* at 230–31, 99 S.Ct. at 1678–79. This way, the need for secrecy and the need for disclosure could be evaluated "by the courts in the best position to make the respective evaluations." *Id.* at 231, 99 S.Ct. at 1679.

The Supreme Court recognized that "[c]ircumstances that dictate the need for cooperative action between the courts of different districts will vary." *Id.* Accordingly, the *Douglas Oil* holding was expressly limited to cases in which the district court that has custody of the grand jury records is not likely to know the needs of the parties or the status of the civil suit for which the materials are requested. Yet the thrust of the opinion—that courts should strive to coordinate the informed views of both the civil trial court and the grand jury court—can be applied to a variety of circumstances, including the case at bar.

In contrast to the grand jury court in *Douglas Oil*, Judge Edelstein did not supervise the grand juries that gathered the materials now being sought for the plaintiff's civil suit. Indeed, several grand juries, probably supervised by more than one district court judge, gathered this material approximately six to nine years ago. In light of the amount of time that has elapsed, and the obvious difficulty in determining which judge supervised what grand jury, it is best to consider Judge Edelstein as the "grand jury judge" for purposes of this motion. Judge Edelstein has recently ruled on a disclosure request for these very documents, the SEC's companion case to the criminal actions is pending before him, and the grand jury materials are within his custody in the Southern District of New York. Having carefully reviewed Judge Edelstein's thorough decision on the SEC's disclosure motion, this Court has the benefit of his views on the need for continued secrecy and the propriety of disclosure. Accordingly, the Supreme Court's concern for the grand jury court's input can be satisfied

in this case by consulting Judge Edelstein and considering his views.

On the other hand, Index Fund's motion should not be resolved by Judge Edelstein for he has no knowledge of the plaintiff's civil suit or the parties' current discovery needs. In this respect, this case falls within the *Douglas Oil* ruling that the civil trial court may be better equipped to determine the need for disclosure at the time the motion is made. Therefore, in an attempt to achieve the "cooperative action" desired by the Supreme Court, an application was presented to Judge Edelstein describing Index Fund's suit and requesting that the grand jury materials be released to this court for in camera review. *See Baker v. United States Steel Corp.,* 492 F.2d 1074 (2d Cir. 1974). That application was granted. Therefore, this Court has had access to the grand jury materials in resolving Index Fund's motion to disclose.

*Disclosure*

■ The competing interests and concerns raised by a motion to disclose grand jury documents have been described by numerous courts confronted with such a request. *E. g., Douglas Oil Co. v. Petrol Stops Northwest, supra; Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Sobotka,* 623 F.2d 764 (2d Cir. 1980); *United States v. Moten,* 582 F.2d 654 (2d Cir. 1978); *Baker v. United States Steel Corp., supra.* Attempting to balance these conflicting considerations, the Supreme Court in *Douglas Oil* stated that:

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice to another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

441 U.S. at 222, 99 S.Ct. at 1674. The burden is on the party seeking disclosure to demonstrate need "with particularity." *Id.* at 221, 222 n.12, 99 S.Ct. at 1674 n.12. And, as noted by the Second Circuit, "a party's need varies in proportion to the degree of access he has to other sources of the information he seeks." *United States v. Moten, supra,* 582 F.2d at 663. Disclosure should not readily be ordered if "[n]o showing has been made that the usual channels of discovery have proved fruitless or have even been diligently pursued." *Baker v. United States Steel Corp., supra,* 492 F.2d at 1080 (Lumbard, J., dissenting on other grounds).

■ As the considerations requiring grand jury secrecy become less relevant in a particular case, the party asserting the need for the materials will have a smaller burden to carry. *Douglas Oil Co. v. Petrol Stops Northwest, supra,* 441 U.S. at 223, 99 S.Ct. at 1675. Yet disclosure must be amply justified even when the grand jury has completed its operation for, although reduced, the interests in grand jury secrecy continue long after the investigation has terminated. *Id.* at 222, 99 S.Ct. at 1674. "[I]n considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Id.* The encouragement of full and frank testimony, and the cooperation of persons possessing relevant documents, are important interests that should not be subordinated in the absence of a showing of particularized need. *See United States v. Moten, supra,* 582 F.2d at 663.

■ *Douglas Oil,* as well as most of the other cases cited above, involved a request for grand jury transcripts. The instant motion, in contrast, seeks both documents and transcripts. Relying on *United States v. Weinstein,* 511 F.2d 622, 627 n.5 (2d Cir.), *cert. denied sub nom. Austin v. United States,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975), the plaintiff contends that Rule 6(e) does not apply to a request for documents which were created for purposes other than the grand jury investigation and do not disclose the nature of the

proceeding.[6] This interpretation, however, is neither supported by the Rule nor by the majority of the cases in this area. Indeed, the case cited by the *Weinstein* court, *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960), expressly stated that "[d]ocuments as well as oral testimony of course may come within its proscription against disclosure." Furthermore, the court applied the *same* standard to testimonial and documentary evidence, although the standard enunciated in *Interstate Dress Carriers* deviates from the standard more recently established by the Supreme Court and other Second Circuit decisions.

While documents as well as testimony fall within Rule 6(e)'s prohibition against disclosing "matters occurring before the grand jury," the former may be subject to less exacting scrutiny and more readily disclosed. *See Illinois v. Sarbaugh*, 552 F.2d 768, 772 n.2 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977). This disparity, however, arises not from the application of a different standard but from the results produced by applying the same standard to different types of evidence. It is not surprising that the disclosure of certain documents, as opposed to grand jury transcripts, might be considered less damaging to the secrecy of a particular proceeding and less threatening to the efficacy of future investigations. On the other hand, the disclosure of transcripts, but not documents, might be appropriate in a given case if the requisite need could be shown for one but not the other. For example, in *United States v. Moten, supra*, the Second Circuit ordered disclosure of the testimony of two grand jury witnesses but denied disclosure of a sealed complaint and an Assistant United States Attorney's affidavit because need was not sufficiently established. Furthermore, the court of appeals neither articulated nor applied a different standard with respect to the disclosure of the documentary evidence.

The Second Circuit, as well as other courts, has distinguished between the release of grand jury materials to the government or an official agency as opposed to a private party. In *Interstate Dress Carriers*, the court stressed that the grand jury documents were to be released "in the furtherance of a lawful investigation." 280 F.2d at 54. In that case, the Interstate Commerce Commission, pursuant to its statutory authority, sought to inspect business records that had previously been turned over to a federal grand jury. Upholding the disclosure order, the Second Circuit stated that "there can be no doubt of the authority of the ICC under § 320(d) of the Motor Carrier Act to inspect appellant's records." *Id.* Similarly, in *United States v. Sobotka, supra*, the court of appeals asserted that an important factor favoring disclosure of grand jury transcripts to the Grievance Committee of the Connecticut State Bar was that "disclosure [was] not simply sought by a private person for use in a judicial proceeding but rather by 'an independent public body charged with the performance of a public duty in a wholly disinterested and impartial manner.'" 623 F.2d at 767, *quoting Grievance Committee of Hartford County Bar v. Broder*, 152 A. 292, 296, 112 Conn. 263 (Sup.Ct.Conn.1930).

■ The plaintiff, citing *United States v. Saks & Co.*, 426 F.Supp. 812, 815 (S.D.N.Y.

---

6. The *Weinstein* court's brief discussion of Rule 6(e), which arose from unusual and distinct circumstances, did not include a thorough examination of the Rule's scope. In *Weinstein*, a district court judge had issued a sua sponte order requiring the government to produce the Selective Service files of twenty-three delinquent registrants who had failed to appear in criminal proceedings pending against them. Reversing the order, the Second Circuit stated that the district court lacked "the statutory or inherent power to enter the order" and that "[n]one of the rules relied upon ... supported [t]his action." 511 F.2d at 627. With respect to Rule 6(e), the circuit court stated that since Selective Service files are confidential, they could be released only to a small class of people that did not include the defendants' court-appointed attorneys who had not been authorized by the defendants to inspect their files. In a footnote, the court, *citing United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir. 1960), suggested that "in any event it is questionable whether Rule 6(e) applies to documents marked as exhibits before the Grand Jury." 511 F.2d at 627 n.5.

1976), contends that "[d]isclosure here is in the 'public interest'" because Index Fund was "plundered" by the wrongful conduct of the defendants, has "precious few assets" with which to pursue its claim, and would be able to prosecute this suit at minimal expense if the grand jury materials were released. Index Fund, however, misconstrues what the relevant decisions mean by "public interest." While the plaintiff is in a sympathetic position, its request for disclosure does not raise the same public interest concerns that arise in cases involving a government body or an official agency. In the very case cited by Index Fund, the court refused to deny grand jury documents to the Federal Trade Commission just because disclosure was previously denied to private parties in an antitrust suit. The court stated that the FTC's application was "made by a government agency empowered to enforce federal laws and it present[ed] additional public policy considerations not raised by prior discovery requests." *Id.* at 815. Other decisions invoking public interest concerns have also involved a disclosure request made by an official body. Generally, these requests stem from an attempt to fulfill the agency's duty, an endeavor presumably designed to promote the public interest. Even if the equities in this case lie with the plaintiff—a question on which the Court expresses no view—it cannot be said that this private lawsuit serves the public in any substantial way, particularly when some of the defendants have already been subject to criminal and SEC proceedings. In short, Index Fund cannot rely on the public interest to support its disclosure request.

■ Turning to the particulars of Index Fund's request, the Court finds that insufficient need has been established to warrant the release of the grand jury documents or transcripts. The Court is mindful that the plaintiff may have a smaller burden to carry because the grand jury investigations were completed a number of years ago. Yet at this juncture, no truly particularized need has been shown. *See United States v. Procter & Gamble Co., supra,* 356 U.S. at 682–83, 78 S.Ct. at 986–87.

Index Fund states that it seeks the grand jury documents "as a discovery tool, and for possible use as evidence at trial." Affidavit of Charles E. McGuinness, sworn to December 23, 1980 ("McGuinness Aff.") ¶ 8. According to the plaintiff this may be the only way to view these documents "because many of [them] were produced for grand jury use almost ten years ago, and thus cannot be reassembled, if at all, without great cost to a plaintiff with only limited funds." *Id.* Index Fund also "seeks to use prior grand jury transcripts to cross-examine defendants, to refresh their recollections, and as a discovery aid." *Id.* ¶ 7.

■ While Rule 6(e) was clearly "not designed as an authorization for pretrial discovery," *United States v. Weinstein, supra,* 511 F.2d at 627, grand jury materials have been disclosed in some cases for the purposes proposed by the plaintiff. The balance to be struck turns on the degree of particularity demonstrated; can the plaintiff show why "the material [sought] is needed to avoid a possible injustice"? *Douglas Oil Co. v. Petrol Stops Northwest, supra,* 441 U.S. at 222, 99 S.Ct. at 1674. For example, in *Douglas Oil,* the Supreme Court noted that the defendants' answers to the plaintiff's interrogatories concerning price communications with competitors appeared to be at odds with their pleas of nolo contendere in the California criminal action. *Id.* at 217, 99 S.Ct. at 1672. As stated by the court of appeals in that case, "there [was] a strong inference that the grand jury materials supported the government's [price-fixing] charges" and so the plaintiff successfully "showed a particularized need beyond mere relevance of the materials." 571 F.2d 1127 at 1130–31 (9 Cir. 1978).[7] In contrast, disclosure of grand jury transcripts was denied by the Supreme Court in

---

7. In light of this particularized need, the court of appeals affirmed the district court's disclosure order. Although the Supreme Court remanded the case on other grounds discussed above, it stated that "neither the District Court nor the Court of Appeals erred in the standard by which it assessed the request for disclosure under Rule 6(e)." 441 U.S. at 223, 99 S.Ct. at 1675.

*United States v. Procter & Gamble Co., supra,* and *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), where nothing had occurred at the time the request was made indicating that trial testimony might contradict statements made before the grand jury. Similarly, no such contradiction, or the likelihood thereof, has been demonstrated in the case at bar. As stated by the *Douglas Oil* Court, "if there were to be conflicts between [defendants'] statements and their actions in the criminal proceeding, the court might have preferred to wait until they ripened at depositions or even during testimony at trial." 441 U.S. at 230, 99 S.Ct. at 1678–79. Such specificity is required so that the disclosure request and order can be "structured to cover only material so needed." *Id.* at 222, 99 S.Ct. at 1674.

In *United States v. Sobotka, supra*—a case where an official body conducting an investigation sought transcripts from a terminated grand jury proceeding—the Second Circuit asserted that "no compelling necessity for disclosure is shown where it is merely easier or less expensive for the party seeking disclosure to have the full grand jury transcript at its disposal." 623 F.2d at 768 n.5. Although Index Fund seeks only a portion of the transcript, as well as documents that may arguably deserve less protection, the *Sobotka* court's statement is pertinent. to its request. Similarly, the court of appeals has stated that particularized need refers in part "to the ability of the party seeking disclosure to obtain the information he seeks from sources other than the protected source." *United States v. Moten, supra,* 582 F.2d at 663. With one exception, discussed below, Index Fund has made no showing that normal discovery channels have been pursued or proved fruitless. *See Baker v. United States Steel Corp., supra.* Although the grand jury transcripts would obviously not be available from any other source, many of the documents might be. Index Fund states that it is difficult, or impossible, to collect these documents because they were produced for the grand jury almost ten years ago. While this may be true, the plaintiff has not dem-

onstrated that traditional discovery methods have been tried and failed or that the evidence to be derived from these documents cannot be obtained through witnesses' testimony or public records produced by the SEC's related action. The passage of time may serve to hamper the plaintiff's quest. Yet no reason has been presented why this material is now being sought for a 1973 case when the grand jury proceedings were terminated in 1975. If the instant motion was prompted simply by the SEC's equally delayed attempt to secure the grand jury materials, Index Fund cannot contend that disclosure is all the more warranted because so many years have passed since the material was first collected. In the words of the Second Circuit, "where plaintiffs' predicament is to such a large extent of their own making and the use to which they could put the transcripts so speculative, greater weight should be given to the fact that, while some of the reasons for maintaining secrecy no longer exist in this case, other traditional reasons survive." *Baker v. United States Steel Corp., supra,* 492 F.2d at 1079.

The one exception referred to above involves materials provided to the grand jury by the State Street Bank and Trust Company of Boston, Massachusetts. Plaintiff states that "pursuant to a subpoena served upon its custodian and transfer agent, the State Street Bank, by the office of the United States Attorney for the Southern District of New York, it provided documents for grand jury inspection in March of 1972." McGuinness Aff. ¶ 5. According to the plaintiff, "many of the materials requested to be produced, and which were produced, were never returned to plaintiff, nor because of the passage of time can their duplicates be now located." *Id.* This is the only reference made by the plaintiff to specific documents that it has tried to locate, and copies of the subpoena and the Bank's response were included in plaintiff's motion papers. Although the plaintiff does not elaborate on its need for these documents, the Court can presume they are relevant to this case on the basis of the description in the subpoena. The Court cannot, however, locate these documents among the items

sought in the instant request. None of the items sought by the plaintiff, which have been marked on the SEC's index of grand jury documents, include records from the State Street Bank. Accordingly, Index Fund's need for these records, and its unsuccessful attempt to locate them, is not relevant to the motion now before the Court.

*Conclusion*

Index Fund's motion seeking disclosure of certain grand jury transcripts and documents is denied. The plaintiff has failed to show the particularized need that would warrant the release of these materials to a party in a private lawsuit. If such need becomes apparent later in these proceedings, Index Fund may renew its motion and seek access to specified documents or transcripts that would fulfill the particular need shown. *See United States v. Sobotka, supra,* 623 F.2d at 769. If such a motion were made, the Court would again "examine the extent of the need for continuing grand jury secrecy, the need for disclosure, and *the extent to which the request was limited to that material directly pertinent to the need for disclosure."* *Douglas Oil Co. v. Petrol Northwest, supra,* 441 U.S. at 223–24, 99 S.Ct. at 1675–76. (emphasis added).

So ordered.